UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LOUIS DANA GRADISHER, | ) | CASE NO. 5:12-cv-2362 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CITY OF AKRON, et al., | ) | **AND ORDER** |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is the renewed motion for summary judgment filed by defendant City of Akron ("the City") as it relates to the claim of municipal liability (Doc. No. 48 ["Motion"]), plaintiff's brief in opposition (Doc. No. 52 ["Opp'n"]), and the City's reply (Doc. No. 56 ["Reply"]). For the reasons set forth herein, the motion is granted.

### I. BACKGROUND

Plaintiff filed his complaint on August 21, 2012 in the Summit County Court of Common Pleas and defendants timely removed on the basis of federal question jurisdiction. The complaint was subsequently amended twice. On September 2, 2014, this Court granted summary judgment in favor of all defendants and dismissed the case. (*See* Doc. No. 60.)

Plaintiff appealed. The Sixth Circuit affirmed in part and reversed in part, summarizing as follows:

> One afternoon, plaintiff Louis Dana Gradisher consumed multiple alcoholic drinks, then made several erratic phone calls to 911 complaining about someone with a gun. When officers from the City of Akron Police Department

> arrived at his residence and Gradisher locked his door and retreated upon seeing them, they feared that someone inside might need help. The officers thereupon broke down the door and entered the house. They found Gradisher hiding under a sheet in his dark basement. What happened next is subject to debate, but after a few seconds, one of the officers used a taser on Gradisher because he allegedly resisted arrest.
>
> Gradisher was later found guilty of improperly using the 911 system. He filed an action against several police officers and the City of Akron, asserting causes of action under 42 U.S.C. § 1983 for constitutional violations due to excessive force, warrantless entry, and malicious prosecution, as well as several common-law tort claims. After the parties filed cross-motions for summary judgment, the district court ruled in the defendants' favor on all claims. At issue is whether the district court properly did so. …
>
> \* \* \*
>
> Because there are genuine disputes of material facts related to whether Officer Craft used excessive force in tasing Gradisher, we reverse the district court's grant of summary judgment to Craft on the excessive-force cause of action [claim 1] and to the City of Akron on the corresponding municipal-liability cause of action [claim 5]. For the same reason, we reverse the district court's grant of summary judgment to Craft on the state-law causes of action for assault and battery [claim 8], intentional infliction of emotional distress [claim 11], and gross neglect [claim 9] to the extent that they relate to the tasing.
>
> We affirm the district court's judgment in all other respects and remand for proceedings consistent with this opinion.

*Gradisher v. City of Akron*, 794 F. 3d 574, 578, 581, 588 (6th Cir. 2015) (also noting that "[i]t is undisputed that Officer Craft actually used the taser on Gradisher.").

Although the Sixth Circuit reversed the grant of summary judgment with respect to the § 1983 municipal liability claim in the second amended complaint (claim five), it did so only "because [it] reverse[d] the … grant of summary judgment to Craft on the excessive-force claim[.]" *Id.* at 587. The court of appeals, however, noted that this Court "did not address whether any municipal policy or custom allowed for the harms Gradisher allegedly suffered." *Id.* It "remand[ed] for the district court to determine in the first instance whether summary judgment

should be granted to either party [on claim 5.]" *Id.* It "affirmed the district court's ruling on municipal liability in all other respects." *Id.*

Therefore, following remand, the Court set deadlines for supplemental briefing on the municipal liability claim. The City subsequently elected to rely upon the arguments on the issue set forth in its original motion for summary judgment. (*See* Doc. No. 72-1, referencing Doc. No. 48.)

## II. DISCUSSION

### A. Legal Standards

When a party files a motion for summary judgment, it must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The sole issue currently before the Court is whether the City can be held liable for Officer Craft's actions should plaintiff prove at trial that Craft used excessive force. A constitutional violation by Officer Craft is a prerequisite to municipal liability because there is no "authoriz[ation] [for] the award of damages against a municipal corporation based on the actions of one of its officers when in fact … the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) (*per curiam*); *see also*, *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (city "cannot be held liable under § 1983 for police conduct that inflicts no constitutional injury") (citing *Heller*).

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged violation occurred because of a municipal policy, practice, or custom; a municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.' *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); *see also Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011). Beyond having to identify 'conduct properly attributable to the municipality,' a plaintiff 'must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.' *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). In other words, 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.' *Id.*" *Brown v. Chapman*, 814 F. 3d 447, 462 (6th Cir. 2016) (Text in Westlaw) (emphasis in original). Further, "considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (footnotes omitted).

B.  **The Parties' Positions**

The City argues in its motion[1] that there is no record evidence of the following: (1) an express City policy directing officers to use excessive force; (2) a widespread practice of excessive force; (3) that a City official with final policy-making authority directed or authorized the purported excessive force, or (4) that the City failed to train its officers after receiving

---

[1] The relevant portion of defendant's motion (Doc. No. 48) as it relates to claim five is located at pp. 337-340.

repeated complaints of use of excessive force. (Motion at 339.) Defendant also argues that plaintiff cannot prove liability under any form of ratification theory. (*Id.*) According to the City, "[n]o evidence indicates that this was anything more than an isolated incident affecting only Gradisher." (*Id.* at 339-40, citing *Fox v. Oosterum*, 176 F.3d 343, 348 (6th Cir. 1999).)

Plaintiff, in opposition,[2] asserts that the City has a policy and custom of ratifying use of excessive force, of failing to conduct meaningful investigations into uses of force, and of failing to train its officers in the proper use of force. In support of his argument that there are material factual disputes precluding summary judgment on the municipal liability claim, plaintiff relies upon the report of his expert, Roger A. Clark, a retired lieutenant with the Los Angeles County (California) Sheriff's Department. Clark retired after 27 years of service and since 1993 has been a police procedures consultant. He has consulted and testified throughout the United States. (Doc. No. 52-23 at 1122 ["Clark Decl."] ¶ (1); Doc. No. 52-23 at 1123-40 ["Clark Report"] at 1136-40.)

In reply,[3] defendant challenges the expert's qualifications, asserting that his only credential relating to use of tasers is that he owns two tasers, along with their download software, and has reviewed all of the City's taser training materials. (Reply at 1207-08, citing Clark Report at 1140.) Further, defendant asserts that Clark's "opinions" are no more than improper legal conclusions, which must be rejected by the Court. (*Id.* at 1208-09.)

---

[2] The relevant portion of plaintiff's opposition brief (Doc. No. 52) is found at pp. 899-903.

[3] The relevant portion of defendant's reply brief (Doc. No. 56) is found at pp. 1209-1214.

**C.     Analysis**

The gravamen of plaintiff's municipal liability claim is "that there was no meaningful investigation of the use of force and consequently a ratification of unconstitutional police action by the City of Akron that creates a question of fact as to City liability." (Reply at 1209; *see also* Opp'n at 899-902.) Plaintiff also asserts that the City has a policy of failure to train its officers against the use of excessive force. (Opp'n at 902.)

As already noted, plaintiff relies upon his expert's opinion to support his argument in favor of denying summary judgment on all aspects of the municipal liability claim as it relates to Officer Craft's alleged use of excessive force. The expert concluded:

> 4.  Officers are trained that the use of a Taser weapon is a significant use of force that is only justified absent reasonable alternatives and only when the totality of circumstances justifies its deployment. Additionally, officers are trained that multiple applications of the Taser should be avoided and are not expected when incapacitation is achieved (as documented here) and handcuffing should occur during the "window of opportunity" created by the first application of the weapon. The record is uncontested that multiple tasings occurred in this incident. In my opinion, this incident does not justify any use of the taser weapon whatsoever - let alone the multiple tasings inflicted by Officer Craft that occurred here. I have also noted that the Craft's taser read-out shows that there was no time between tasings for any officer to assess or provide opportunity for Mr. Gradisher to comply in any way or for officers to handcuff him. Thus, Officer Craft did not follow the tactical guidelines (as trained in V-17, and APD V-6), required of every certified law enforcement officer, when he used a Taser against Mr. Gradisher. When confronted by the officers in his basement, Mr. Gradisher testified that he was sitting with his hands in the air. The police reports have documented Mr. Gradisher's similar position when they discovered him. Mr. Gradisher never threatened to harm or physically attack anyone in his home. Nonetheless, Officer Craft proceeded, absent any physical threats toward the officers, to use his taser, which was profoundly unnecessary and excessive.
>
> \* \* \*
>
> 6.  The use of force investigation conducted in this case was incomplete and did not meet the professional investigative necessities to obtain and

> document the true facts, and is another indication of a seriously flawed organizational culture within the APD [Akron Police Department] and its command staff.
>
> 7. According to the deposition testimony of all APD supervisors and commanders (including Chief of Police Nice), that upon their review, no departures from the established APD custom, practice, policy or procedure occurred in this incident. The APD through its chain of command appears to have endorsed the dangerous tactics and use of force that are connected to this incident. As such, their collective approval of these tactics puts the communities they serve at unnecessary future risk of death and/or injury from the defendant APD officers and others on the department who have been, or are now, similarly trained and/or supervised. It must be noted here that Sergeant Joyner has testified that he has never in his entire career (since 2008) investigated or reviewed a use of force by any APD officer that he considered excessive and/or out of policy. Lieutenant Leeser (according to Joyner) has approved 100% of Joyner's conclusions. Chief Nice has testified that he reviews approximately 250-300 force reports per year and has only questioned 2 or 3 (.01 % - .04%). In my opinion this sends a clear message to APD officers on the line that any use of force they chose is acceptable within the APD.

(Clark Report at 1132-33.)

Although defendant generally challenges Clark's specific credentials regarding the use of tasers, another district court within the Sixth Circuit, applying its gate-keeping function under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), has certified Clark as an expert in "police practices." *See Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 596 F. Supp. 2d 1101, 1119-20 (M.D. Tenn. 2009)[4] ("'the proper actions of individual officers in one discrete situation' is an appropriate field for expert testimony, so long as the expert has sufficient credentials and the testimony will assist the trier of facts[]" (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 907-08 (6th Cir. 2004)). The court in *Lee* concluded:

---

[4] *Aff'd in part on other grounds*, 432 F. App'x 435 (6th Cir. 2011).

> Plainly, Clark's nearly three decades of experience in the police department, including work as a high level supervisor, lecturer and instructor make him uniquely qualified to discuss whether the defendants used an appropriate level of force here, and whether Metro properly trained its officers in how to use the tools that they were given. While Clark has limited experience working with the taser, based on his experience, he is capable of understanding how a taser basically works and whether a certain type of application would be unreasonable. The court finds that this testimony is obviously relevant, and, based on Clark's experience, reliable, particularly given the defendants' right to conduct a vigorous cross examination. Whether his expertise is dated or his experience with tasers too limited go to the weight of his testimony, not its admissibility.

*Lee*, 596 F. Supp. 2d at 1122. For purposes of this summary judgment motion, the Court will assume that Clark qualifies as an expert.

As a threshold matter, there is no support in the Clark Report for municipal liability based upon a failure to train theory. In paragraph 4 of the report, quoted above, Clark is clear that Officer Craft "did not follow the tactical guidelines (as trained in V-17 and APD V-6)[.]" In other words, Clark's own conclusion is that Officer Craft was properly trained, but that he deviated from his training when dealing with plaintiff. The City is entitled to summary judgment to the extent there is a claim for municipal liability based on failure to train.

Plaintiff also makes a claim of municipal liability based on a theory that Officer Craft's actions were ratified by the City's policy of failing to meaningfully investigate uses of force, which, in turn, led officers like Craft to believe that "any use of force they chose is acceptable within the APD." (Clark Report at 1133, ¶ 7.) To prevail on this claim, plaintiff "must show not only that the investigation was inadequate, but that the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the shooting here." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir.

1996)); *see also Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013) ("a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims.") (citing *Thomas*, 398 F.3d at 433; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989)).

Plaintiff has failed to make any such showing. The Clark Report concludes, in ¶ 7, that the "chain of command appears to have endorsed the dangerous tactics and use of force that are connected to this incident [between Officer Craft and Gradisher]" and "sends a clear message … that any use of force [officers] chose is acceptable[.]" This is based on one fact – Chief Nice's testimony that, of the 250-300 use of force reports he reviews each year, he has only questioned 2 or 3. But, without knowing the content of each report, these statistics are meaningless. *See, e.g.*, *Thomas*, 398 F.3d at 432 (the expert's conclusion "that the [p]olice [d]epartment must have an unwritten policy of condoning excessive force because of the mere number of complaints previously filed against it[] is insufficient to create a genuine issue of material fact on which a jury could reasonably find that such a policy exists").

## III. CONCLUSION

For the reasons set forth herein, the City's motion for summary judgment on claim five is granted.

The only claims now remaining for trial are Gradisher's claim of excessive force against Officer Craft (claim 1) and, to the extent they relate to the tasing, the state law claims against Craft of assault and battery (claim 8),[5] gross neglect (claim 9), and intentional infliction of emotional distress (claim 11).[6]

**IT IS SO ORDERED**.

Dated: June 1, 2016

                                            **HONORABLE SARA LIOI**
                                            **UNITED STATES DISTRICT JUDGE**

---

[5] The City was also named in the assault and battery claim; but the Court of Appeals reversed only the summary judgment "in Craft's favor," and then only to the extent the claim may be related to the tasing. *Gradisher*, 794 F.3d at 587.

[6] Under federal law, the question of whether a police officer used excessive force is an objective one, *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989), whereas the three remaining state law claims are all torts, with a question of intent and/or willfulness as a central element of each, and with a focus on the mental state of the alleged wrong-doer. The jury will be required to understand and apply several distinct standards. This will require more lengthy testimony, more lengthy jury instructions, and, very possibly, jury confusion. Moreover, this additional time, effort, and confusion will serve no purpose because, even if plaintiff prevails on all of these claims, he cannot double-recover on any damages he might prove. *Johnson v. Howard*, 24 F. App'x 480, 484-85 (6th Cir. 2001) (citing *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 333, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980)). The Court encourages plaintiff to consider voluntarily dismissing the state law claims.